## Case No. 783.

### BAKER et al. v. The TROS.

[31 Leg. Int. 133;[1] 10 Phila. 223; 21 Pittsb. Leg. J. 116.]

Circuit Court, E. D. Pennsylvania. 1874.

SALVAGE—CONTRACT WITH WRECKING COMPANY—RIGHTS IN REM OF ASSISTANT OF CONTRACTOR.

Where salvage services are performed merely by the permission of another wrecking company, which had possession of the vessel, and which services were rendered with the understanding that the wrecking company, and not the vessel, was to be responsible. *Held*, that the vessel is not liable for such salvage services.

[See The Marquette, Case No. 9,101; The Silver Spray, Id. 12,857; The Whitaker, Id. 17,524, Id. 17,525.]

Appeal from the decree of the district court [of the United States for the eastern district of Pennsylvania.]

[In admiralty. Libel by B. & J. Baker & Co. against the ship Tros for salvage. Libel dismissed.]

Samuel C. Perkins, for libellants.
Henry Flanders, for respondents.

Opinion by McKENNAN, Circuit Judge. The only question, which it is necessary to consider in this case, relates to the right of the libellants to resort to the vessel and her cargo for compensation for the salvage services rendered by them. That they did render valuable services is not denied, nor is the amount claimed for them contested by the respondent; but it is maintained that their services were performed exclusively upon the footing of an engagement by a salvor, who was employed by the master of the vessel, and that, therefore, they have no remedy against the respondent.

The ship was a Norwegian vessel, and on her voyage from Marseilles to Philadelphia, with a cargo of iron, went ashore at Watchapique inlet, on the coast of Virginia, on the 6th of February, 1873. The master left the vessel on the 10th of February, and repaired to Philadelphia, to make arrangements for getting her afloat, instructing the mate, if any aid was offered during his absence, to decline it. On the twelfth the libellants' steamer, "B. & J. Baker," arrived at the vessel and proffered assistance, but the mate declined it, informing her captain of his master's instructions. The following day, during a gale, a signal of distress was set on the "Tros," in answer to which a boat was sent from the B. and J. Baker, and the crew of the "Tros" were taken off. On the next

[1] [Reprinted from 31 Leg. Int. 133, by permission.]

day, the 14th, the officers of the libellants' steamer put a steam-pump on board the "Tros," stating, in reply to an inquiry of the mate, "that if it was not wanted they could take it back again." The master of the "Tros," having made an agreement with the Coast Wrecking Company of New York, for the salvage of his vessel, that company's steamer Lackawanna reached her on the morning of the 15th, when she was given in charge to the steamer's officers, and they went to work to extricate her. "On the evening of the 15th, Capt. Stoddart of the firm of B. & J. Baker & Co., of New York, arrived at the 'Tros,' when G. W. Chadwick, the officer in charge of the Lackawanna, told him that he was then in charge of the 'Tros;' that Captain Stoddart asked permission to furnish aid in getting her off; that he at first declined to make any use of his force or material, but finally, at the solicitation of said Stoddart, he agreed to employ his lighters, steam-pump, and some of his men, fully explaining to said Stoddart that he employed such force and material as the agent of the Coast Wrecking Company of New York; that he was to be paid by said company according to the usual rates of said company, and was to have no claim whatever upon the ship." The facts embodied in this compendious statement of the proofs are supported by the uncontradicted testimony of the witnesses. Their import is free from all ambiguity. They establish

1. That the services of the libellants were declined by the officer in charge of the respondent's vessel.

2. That an agreement was made by the master of the respondent vessel with the Coast Wrecking Company of New York for the salvage of the vessel and her cargo, and that possession of her was surrendered to that company for that purpose.

And 3. That the libellants' services were performed only by the permission of the Coast Wrecking Company, and under its direction, with distinct notice that it was to be responsible for their compensation, and not the vessel. Upon what principle or reason then can the vessel be held liable? It is argued that its liability results from the fact that the libellants were the first to render assistance. But this extended only to the relief of the crew, without any contemplated further service. However meritorious it may have been, the saving of human life does not constitute an independent ground of salvage compensation. When it is characterized by great hazard to the salvor, and is accompanied by the preservation of property, it will doubtless enhance the allowance of remuneration for the latter service, but it is only a service of humanity, the value of which is incomputable by any measure of pecuniary recompense.

Certainly no other assistance was rendered before the arrival of the Lackawanna. It is true that before her arrival they had placed on board the "Tros" a steam-pump, but no use whatever had been made of it. Whatever priority they might have acquired, under other circumstances, by their proximity to the vessel, and their readiness to afford assistance, they did not assume any charge of her, or perform any actual service for her relief. She was not derelict, nor does she appear to have been in a condition of such imminent peril as to require immediate efforts to save her, or to warrant an intrusive interposition by the libellants. She was in the actual custody of an officer on board, and it pertained to him to determine whose assistance should be accepted. Against his will they could not entitle themselves to the character or reward of salvors, and their conduct repels any presumption that they sought to do so: The Dodge Healy, [Case No. 2,849.] Their only title to compensation, therefore, accrued by reason of the services performed after the vessel was put into the possession of the Coast Wrecking Co. The evidence in the cause determines the footing upon which these services were rendered. It seems to me to exclude any other conclusion than that the libellants were subordinate to the wrecking company, as its auxiliaries only, and that they accepted employment from it upon condition that it should be liable for their compensation, and not the vessel. By their own stipulation, therefore, the vessel is not their debtor, and their libel must be dismissed with costs.